UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 06-393-GWU


JAMES WEBB,                                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the Court on cross-motions

for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
      claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities?  If yes, proceed to

1

06-393  James Webb

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

06-393  James Webb

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

06-393  James Webb

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

6

may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley  v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, James Webb, was found by an administrative law judge (ALJ) to have a "severe" impairment due to degenerative disc disease.   (Tr. 15).   Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Webb retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 16-19).   The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE a series of hypothetical questions.  The hypothetical question most closely resembling his ultimate residual functional capacity finding asked whether the plaintiff, who was 54 years old and a high school graduate with a history of "low semi-skilled" jobs with no transferability of skills (Tr. 134-5, 150), could perform any jobs if he were limited to "light" level exertion with a sit/stand option every 45 minutes, and also had the following non-

exertional impairments.  (Tr. 150-1).  He: (1) could occasionally climb, stoop, crouch, and crawl; (2) could not be exposed to dust, fumes, smoke, chemicals, or noxious gases; and (3) had a "limited but satisfactory" ability to maintain attention and concentration.  (Tr. 151).[1]  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies.  (Id.).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.  The plaintiff's Date Last Insured (DLI) was December 31, 2003 (Tr. 13, 49), meaning that he was required to show disability existing before that date in order to be entitled to DIB.  His SSI application is not affected.

Mr. Webb alleged disability due to low back problems, which had caused him to stop working in December, 1998, his alleged onset date.  (Tr. 58).  However, he did not protectively file for benefits until September 15, 2004 (Tr. 13, 42, 118), and explained that he had done some odd jobs between 1999 and 2004 such as mowing

---

[1]The ALJ's residual functional capacity finding in his decision differed from the hypothetical in that it had no environmental limitations and also cited a "limited but satisfactory" ability to deal with work stresses, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability.  (Tr. 16).  However, no treating, examining, or reviewing source cited mental restrictions, and the additional mental factors appear to be a gratuitous finding by the ALJ which would not clearly affect the outcome of the case were it to be remanded for additional testimony on this point. Moreover, the plaintiff has not raised the issue on appeal.  Therefore, any error on this issue is harmless.

lawns and painting.  (Tr. 137).  He had received little medical treatment for his back problem except for a chiropractor.  (Id.).  In addition to lower back problems, he described trouble with his shoulders from overuse, and pain in his legs which caused them to lock up at times.  (Tr. 141, 143).  He could not afford prescription medication.  (Tr. 139).  He also described difficulty with his attention and concentration due to his pain.  (Tr. 142).

Dr. Thadis Cox conducted a consultative examination of Mr. Webb in January, 2005, and noted that he had a normal range of motion of all his joints, but had pain with active range of motion of his right shoulder, bilateral hips, and spine.  (Tr. 86). Dr. Cox concluded that there was no evidence for significant physical restriction.  (Tr. 87).

Dr. Emanuel Rader examined Mr. Webb in June, 2005, and also obtained an x-ray of the lumbosacral spine showing degenerative changes at the lumbosacral junction and loss of height of the two lower lumbar discs.  (Tr. 108, 110).  Dr. Rader's examination showed that the plaintiff had lower back spasms with some decreased range of motion, could squat "poorly" and could not walk on his heels or toes.  (Tr. 108).  There were no reflex deficits.  Dr. Rader felt that Mr. Webb's condition warranted an MRI and a functional capacity evaluation, and added that "I consider him to be disabled for gainful employment for manual labor."  (Tr. 109).

Finally, Dr. Theodros Mengesha examined the plaintiff in January, 2006, and reviewed the x-ray obtained by Dr. Rader.  (Tr. 111).  The physician described Mr. Webb as "elderly," but with a normal gait and with no apparent distress.  (Tr. 112). However, the only abnormality on physical examination was that he "presented to have mild pain at 90 degrees" on straight leg raising.  Dr. Mengesha concluded that Mr. Webb had an abnormal x-ray but a normal physical examination, and could use a further workup in the form of an MRI, but had evidence of mild restrictions in sitting, standing, walking, carrying, lifting, bending, squatting, crawling, and climbing. (Tr. 113).  The physician completed a functional capacity form indicating that the plaintiff could sit, stand, and walk eight hours each "with rests," was capable of lifting and carrying up to 100 pounds frequently, and could bend, squat, crawl, climb, and reach above shoulder level "frequently."  (Tr. 114).

Although the ALJ's decision indicated that he gave great weight to Dr. Cox and Dr. Mengesha (Tr. 17), he clearly limited the plaintiff exertionally to a much greater degree than either of the physicians and also included restrictions on sitting and standing which appear to give the plaintiff considerable benefit of the doubt. Although Dr. Rader referred to Mr. Webb as disabled, he appeared to be referring to disability for "manual labor," which would not be inconsistent with the ALJ's functional capacity conclusions.

The plaintiff's sole argument on appeal is that the ALJ erred in applying Rule 202.20 of the Commissioner's Medical-Vocational Guidelines (the "grids"), applicable to a "younger individual age 45-49," which was the plaintiff's age on his alleged onset date in December, 1998.  (Tr. 17).  The plaintiff correctly notes that he was 54 years old at the time of the hearing in December, 2005, having reached that age on November 28, 2005.  (Tr. 134).  The plaintiff suggests that, as he was "extremely close to turning 55 years old" at the time the ALJ issued his decision, he could have been evaluated under Rule 202.06, applicable to a person over 55, with a high school education and no transferable skills, which directs a conclusion of "disabled." The Commissioner's regulations do provide that the age categories in the grids will not be applied "mechanically in a borderline situation," which is described as being within a few days to a few months of reaching an older age category.  20 C.F.R. Sections 404.1563(b); 416.963(b).  However, as far as Mr. Webb's DIB application is concerned, the DLI was December 31, 2003, almost three years before the age he reached 55.  Clearly, this is outside the period of time contemplated by the regulations.  As for the SSI application, the ALJ's decision was issued on March 29, 2006, which was almost eight months before the plaintiff's 55th birthday.  While this is a closer case, and the Sixth Circuit has noted in similar circumstances that an ALJ could have proceeded as if the plaintiff had already reached age 55, but he was under no obligation to do so.  Crady v. Secretary of Health and Human Services, 835

11

06-393  James Webb

F.2d 617, 622 (6th Cir. 1987) (emphasis added).  The Court noted that "the fact that age categories are not to be applied mechanically . . . does not mean that a claimant must be moved mechanically to the next age category whenever his chronological age is close to that category."  (Id.).  In the present case, while Dr. Mengesha described Mr. Webb as appearing "elderly," the Court in <u>Crady</u> concluded that observations of examining physicians were not binding on the ALJ who was able to observe the plaintiff in person.  Therefore, substantial evidence supports the administrative decision.

If the plaintiff is entitled to benefits under the grids at the age of 55, his proper remedy is to file a new application.

The decision will be affirmed.

This the 23rd day of May, 2007.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**

12